**UNION SECURITY LIFE INSURANCE COMPANY, Appellant–Defendant,**

v.

**Robert E. ACTON, Appellee–Plaintiff.**

No. 18A02–9802–CV–147.

Court of Appeals of Indiana.

Nov. 19, 1998.

Robert D. Mass, Stark Doninger & Smith, Indianapolis, for Appellant–Defendant.

Ronald L. Wilson, Badell & Wilson, P.C., Rushville, for Appellee–Plaintiff.

## OPINION

FRIEDLANDER, Judge.

Upon interlocutory appeal, Union Security Life Insurance Company appeals the denial of its summary judgment motion in an action brought by Robert Acton, in which he challenged the denial of his insurance claim. Union Security presents the following restated issue for review:

Did the trial court err in determining that a material issue of fact exists concerning whether a claim for disability coverage should be denied because of an exclusionary clause in the policy?

We affirm.

The material facts are not in dispute. On October 14, 1994, Acton purchased two credit life and disability insurance policies from Union Security, each insuring separate bank loans that Acton had obtained. The policies were identical, and contained the following exclusionary clause:

***WHAT WE WON'T PAY***

\* \* \* \* \*

*EXCEPTIONS TO DISABILITY COVER-AGE.* We do not cover disabilities resulting from: (a) pregnancy; (b) intentionally self-inflicted injury; (c) flight in a non-scheduled aircraft; (d) war or military service; (e) foreign travel or residence; or (f) *a pre-existing condition (a condition which required medical diagnosis or treatment within the 6 months immediately before the effective date and which causes a loss within the 6 months immediately after the effective date ).* Disability beginning 6 months after the effective date will not be considered pre-existing.

*Record* at 26 (reverse side) (emphasis supplied).

Acton worked as a nurse anesthetist at Rush Memorial Hospital. On January 6, he was struck by an ambulance cart in the emergency room and suffered a back injury. On January 26, 1995 he was placed on permanent disability. He filed claims to collect on the Union Security disability policies. On one claim form, Dr. Morrell, Acton's treating physician, wrote the following in the space entitled "Nature of Illness or Injury Causing Disability": "[S]evere disk disease w/exacerbated [sic] struck by ambulance cart in ER while working on PT." *Record* at 21 (reverse side). On the other claim form, Dr. Morrell wrote: "approx. 1 mo. ago (6 Jan. 95) [patient] struck by ambulance cart in ER while working on [patient]." *Id.* at 22 (reverse side).

After reviewing Acton's medical history via records obtained from Dr. Morrell's office, Union Security denied the claims. Dr. Morrell was deposed following the initiation of a lawsuit by Acton. Dr. Morrell's records and deposition testimony reveal the following. Dr. Morrell first became aware that Acton had a back problem in late 1987 when he received a report indicating that Acton had a percutaneous diskectomy at L3–L4 and L4–L5 in late 1987. In February 1990, Acton visited Dr. Morrell complaining of low back pain. A February 13, 1990 MRI revealed that Acton had a degenerative disk disease at L4–L5 and L5–S1. The test showed that Acton suffered from a minimal degree of disk degeneration and osteoporotic spurring. Ac-ton returned periodically thereafter to Dr. Morrell's office complaining of back pain.

After a 1994 visit, Dr. Morrell noted: "[Acton] has increased pain in his back if he does any manual work at all." *Record* at 63. Dr. Morrell testified that the pain in 1994 "probably" related to the condition for which Acton underwent surgery in 1987. *Id.* Dr. Morrell testified as follows about the relationship of the 1995 injury to the 1987 surgery:

Q. But it's consistent at least with what he was coming in and complaining to you about in '90 and '94?

A. Yes, it is.

Q. And how does one get to the position where they cause a radiologic report like this one, Exhibit B, over that period of time from 1987? I mean, is it a disease process? Is it a trauma process?

A. This is a disease process.

Q. Okay.

A. What can happen, you can have something like this, that is, that smolders.

It's kind of there and then you can have something traumatic happen and then it will flare up.

That can happen; but he's been having some problems with it. He's been functioning and now he's not functioning and what's happened?

He has a weakness in his lower back and he's able to function and then when his, when he had his injury, when he hurt his back in the Emergency Room what happened, you are kind of standing by the edge of the Grand Canyon.

You are walking along. That's not a problem; but if somebody gives you a little shove and you go 9000 feet you are going to have a real problem and it's the same thing here.

He's just kind of, he's getting along and then when he had that accident it just stirred everything up.

*Record* at 67–68. Dr. Morrell went on to testify that the accident in the emergency room did not cause Acton's condition, but exacerbated it.

Union Security denied Acton's claim for disability insurance on the basis of the exclu-

sionary clause set out above, contending that Acton's disability was caused by a "pre-existing condition" within the meaning of sub-clause (f). Acton filed suit against Union Security for denying the claim and Union Security filed an answer and motion for summary judgment. Union Security appeals the denial of the summary judgment motion.

The standard of review when considering a ruling on a motion for summary judgment is well settled. We apply the same standard as did the trial court. *Ellerbusch v. Myers*, 683 N.E.2d 1352 (Ind.Ct.App.1997). We construe the designated evidence in a light most favorable to the nonmoving party and determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Indiana State Police v. Don's Guns and Galleries*, 674 N.E.2d 565 (Ind.Ct.App.1996), *trans. denied.* This court has observed that questions involving the interpretation of an insurance policy are generally questions of law and therefore are particularly well suited for summary disposition. *Sutton v. Littlepage*, 669 N.E.2d 1019 (Ind.Ct.App.1996). This is especially so where, as here, the parties have each designated the same evidence in support of their respective positions. In the instant case, both parties rely upon the language of the exclusionary clause and the deposition of Dr. Morrell.

As Union Security points out in its brief, there is only one Indiana case that discusses an exclusionary clause similar to the one at issue here. That case, *White v. Western Diversified Ins. Co.*, 524 N.E.2d 1304 (Ind.Ct.App.1988), differs from the instant case, however, because that case focused upon a contractual provision that limited the operation of an exclusionary clause such as the one at issue here in the event of renewal or refinancing. *White* therefore addressed the effective date of coverage in the event of renewal or refinancing. Such is not an issue here.

The question we are called upon to answer is whether an injury that exacerbates a pre-existing condition, which in turn results in disability, amounts to "a disabilit[y] resulting from ... a pre-existing condition" within the meaning of the exclusionary clause in the

policy issued by Union Security. When considering this question, our primary function is to effectuate the intent of the parties as expressed in the policy language itself. *White v. Western Diversified Ins. Co.*, 524 N.E.2d 1304. Generally, we can effectuate the intent of the parties simply by applying the plain and ordinary meaning of the contract language. Construing the language in this fashion, without addition or elaboration, lessens the possibility of rewriting the parties' agreement. *Id.*

Union Security contends that the exclusionary clause applies because Acton's disability was the result of a pre-existing condition. To attribute Acton's disability only to a pre-existing condition strikes us as so simplistic as to be inaccurate because it ignores an important causal factor. Acton's pre-existing condition alone did not prevent him from working. Rather, it is undisputed that Acton's disability was triggered by a work-related accident. In Dr. Morrell's opinion, that accident "exacerbated" the pre-existing condition. "Exacerbated" means "to cause ... to become more severe." *Webster's Third New International Dictionary* 790 (1976). It was the effect of the accident *upon* the pre-existing condition that rendered Acton disabled, not merely the pre-existing condition itself. Therefore, the accident was a significant precipitating factor in causing Acton's disability.

The exclusionary clause at issue was intended to insure against disability caused by an accident. In our view, it is of no moment that the accident caused disability by aggravating a pre-existing condition, rather than causing a disability unrelated to a pre-existing condition. To construe the exclusionary clause in the manner Union Security urges would operate to broaden the exclusion beyond what the plain language indicates that the parties reasonably would have intended.

We hold that when disability results from an accident that aggravated a pre-existing condition, such is not excluded from coverage by an exclusionary provision in a disability insurance contract pertaining to pre-existing conditions if the pre-existing condition, by

itself, did not prevent the insured person from working.

Judgment affirmed.

NAJAM and MATTINGLY, JJ., concur.