**ALLSTATE INSURANCE COMPANY,**
Appellant–Defendant,

v.

**Angela H. BRADTMUELLER,**
Appellee–Plaintiff.

No. 02A03–9809–CV–377.

Court of Appeals of Indiana.

Sept. 9, 1999.

Richard P. Samek, Larry L. Barnard, Fort Wayne, Indiana, Attorneys for Appellant.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Defendant Allstate Insurance Co. ("Allstate") brings this interlocutory appeal from the denial of its motion for summary judgment in the lawsuit brought by its insured, Appellee–Plaintiff Angela H. Bradtmueller ("Bradtmueller"), to recover benefits under the underinsured motorist endorsement of Allstate's policy. We affirm.

### Issue

The sole issue raised on appeal may be restated as whether the trial court correctly concluded that Bradtmueller could invoke the "escape clause" [1] in the arbitration provision of Allstate's policy to obtain a trial on the issue of Allstate's liability for underinsured motorist benefits.

### Facts

The operative facts are undisputed. On November 19, 1993, Bradtmueller was seriously injured in an automobile accident. (R. 10). The driver of the other automobile involved in the accident had liability coverage limits on an insurance policy in the amount of $25,000.00. (R. 11). That driver's insurance carrier paid Bradtmueller $25,000.00. (R. 11). Bradtmueller maintained uninsured and underinsured motorist coverage in the amount of $100,000.00 per person pursuant to an automobile policy issued by Allstate. (R.

---

1. An "escape clause" in an insurance policy governing the arbitration of uninsured or underinsured motorist benefits permits either party to demand a trial where the arbitrators' award exceeds a certain amount. *See National Gen. Ins. Co. v. Riddell*, 705 N.E.2d 465, 467–68 (Ind.Ct. App.1998).

13). Allstate paid Bradtmueller $2,305.05 in medical pay benefits under the policy. (R. 58–59).

Allstate's policy provided in pertinent part as follows:

Limits of Liability

1. The coverage limits shown on the declarations page for:

a. 'Each person' is the maximum amount we would pay for damages arising out of **bodily injury** to one person in any one **motor vehicle** accident, including damages sustained by any one else as a result of that **bodily injury**.

. . . .

3. The limits for Coverage § will be reduced by all amounts paid by or on behalf of the owner or operator of the underinsured **motor vehicle**.

. . . .

5. Subject to the above limits of liability, damages payable will be reduced by:

a. All amounts paid by the owner or operator of the uninsured auto, including the underinsured motor vehicle, or anyone else responsible. This includes all sums paid under the bodily injury property damage liability coverage of this or any other automobile policy.

b. All amounts payable under any worker's compensation law, disability benefits law, or similar law, automobile medical payments, or any similar automobile medical payments coverage.

. . . .

**IF WE CANNOT AGREE**

If the insured person or we do not agree on that person's right to receive any damages or the amount, then at the written request of the insured person, the disagreement will be settled by arbitration. Arbitration will take place under the rules of the American Arbitration Association unless either party objects.

. . . .

Regardless of the method of arbitration, any award not exceeding the limits of the financial responsibility law of Indiana, will be binding and may be entered as a judgment in a proper court.

Regardless of the method of arbitration, when any arbitration award exceeds the financial responsibility limits of the State of Indiana, either party has a right to trial on all issues in a court of competent jurisdiction. This right must be exercised within 60 days of the award. Costs, including attorneys fees, are to be paid by the party incurring them.

(R. 18–19, 21) (emphasis in original).

Bradtmueller submitted a claim for underinsured motorist benefits to Allstate but the parties were unable to agree as to the amount to which Bradtmueller was entitled. (R. 58–59). The parties pursued arbitration. (R. 59). On May 1, 1997, the arbitration panel issued its decision which read as follows:

The arbitrators find for the plaintiff and against the defendant in the amount of $50,000, against which defendant is entitled to a credit of $27,305.05. Therefore, plaintiff shall have and recover the sum of $22,694.95 from the defendant herein.

(R. 43).[2]

On May 12, 1997, Bradtmueller filed the instant lawsuit alleging that she was entitled to underinsured motorist benefits from Allstate. (R. 10). Allstate moved for summary judgment on the basis of its assertion that Bradtmueller was precluded from bringing her claim by the arbitration provision of the insurance contract. (R. 39–51). The trial court denied Allstate's motion. (R. 104–05). This interlocutory appeal followed. (R. 113–15). We denied Bradtmueller's motion to file a belated appellee's brief.

**Discussion and Decision**

*A. Prima Facie Error Standard*

■ At the outset, we must consider that Bradtmueller failed to timely file an appellee's brief. When an appellee does not submit a brief, an appellant may prevail by making a prima facie case of error. *Rzeszutek v. Beck*, 649 N.E.2d 673, 676 (Ind.Ct.App. 1995). The prima facie error rule protects

2. The $27,305.05 credit was comprised of the sum of the underinsured motorist's carrier's $25,000.00 payment and Allstate's payment of $2,305.05 of medical pay benefits. (R. 58–59).

this court and relieves it from the burden of controverting arguments advanced for reversal, a duty which properly remains with counsel for the appellee. *Id.* However, this court may nevertheless exercise its discretion to decide the case on the merits. *In re Marriage of Jackson,* 682 N.E.2d 549, 551 (Ind.Ct.App.1997). We choose to exercise that discretion in the present case. *See id.*

### B. Standard of Review— Summary Judgment

As stated in *Barnes, as Mayor of the City of Gary v. Antich,* 700 N.E.2d 262, 264–65 (Ind.Ct.App.1998), *trans. denied:*

> In reviewing a motion for summary judgment, this court applies the same standard as the trial court. We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. A trial court's grant of summary judgment is 'clothed with a presumption of validity,' and the appellant bears the burden of demonstrating that the trial court erred.

(citations omitted).

### C. Interpretation of Contracts/Insurance Policies

As stated in *Peoples Bank & Trust Co. v. Price,* 714 N.E.2d 712 (Ind.Ct.App.1999):

> Our supreme court has recently confirmed its commitment to advancing the public policy in favor of enforcing contracts. Indiana courts recognize that it is in the best interest of the public not to unnecessarily restrict persons' freedom to con-

tract. Thus, as a general rule, the law allows competent adults the utmost liberty in entering into contracts which, when entered into freely and voluntarily, will be enforced by the courts. Nevertheless, despite the very strong presumption of enforceability, courts have refused to enforce private agreements that contravene statute, clearly tend to injure the public in some way, or are otherwise contrary to the declared public policy of Indiana.

. . . .

> Construction of the terms of a written contract is a pure question of law for the court; thus, our standard of review is de novo. The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the intent of the parties is determined from the four corners of that instrument. If, however, a contract is ambiguous or uncertain, its meaning is to be determined by extrinsic evidence and its construction is a matter for the fact finder. In interpreting a written contract, the court should attempt to determine the intent of the parties at the time the contract was made as discovered by the language used to express their rights and duties. The contract is to be read as a whole when trying to ascertain the intent of the parties. The court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. The court must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting. Moreover, in the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction or subject matter will, as a general proposition, be construed together.

(Slip op. at 7–9) (citations omitted).

 Questions involving the interpretation of an insurance policy are generally questions of law and therefore are particularly well suited for summary disposition. *Union Sec. Life Ins. Co. v. Acton,* 703 N.E.2d 662, 664 (Ind.Ct.App.1998), *trans. denied.*

Where there is an ambiguity in an insurance contract, the policy is to be construed strictly against the insurance company. *Stevenson v. Hamilton Mut. Ins. Co.*, 672 N.E.2d 467, 471 (Ind.Ct.App.1996). Strict construction against the insurer is driven by the fact that the insurer drafts the policy and foists its terms upon the customer. *Id.* The insurance companies write the policies; we buy their forms or we do not buy insurance. *Id.* An insurance contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning. *Id.* If there is such an ambiguity, the policy should be interpreted most favorably to the insured. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind.1992). However, an ambiguity does not exist simply because a controversy exists between the parties, with each favoring a different interpretation. *Stevenson*, 672 N.E.2d at 471. Moreover, the failure to define a term in an insurance policy does not necessarily make it ambiguous. *Id.*

### D. Parties' Contentions

Bradtmueller contends that because the terms "any award" and "any arbitration award" were not defined in the insurance policy, "award" means the $50,000.00 in total damages awarded by the arbitration panel, before the credits were applied. Therefore, Bradtmueller asserts that she should be allowed to invoke the "escape clause" and pursue a cause of action under the terms of the policy because the amount awarded exceeded Indiana's minimum mandatory financial responsibility limit of $25,000.00. *See* IND. CODE § 9–25–2–3.

On the other hand, Allstate argues that the amount of the "award" was $22,694.00 after the credits were applied. Accordingly, Allstate reasons, Bradtmueller is precluded from bringing her cause of action because the amount awarded was less than the $25,000.00 minimum mandatory financial responsibility limit.

### E. Interpretation of "any award" or "any arbitration award" as used in Allstate's Policy

■ Although no Indiana case has decided the precise question posed by the present case, it is well settled under Indiana law that where an insurance policy does not define a term which is susceptible to more than one reasonable interpretation, the interpretation favoring the insured will be adopted. *See Tate*, 587 N.E.2d at 668 (because "amounts payable" was not defined in the policy, the phrase was held to refer to the total amount of damages and not the coverage limits); *See also Transcontinental Technical Services, Inc. v. Allen*, 642 N.E.2d 981, 984 (Ind.Ct. App.1994).

■ In the present case, the phrases "any award" or "any arbitration award" were not defined in Allstate's insurance policy. There can be no dispute that, without any consideration of amounts set off to reduce Allstate's liability under the underinsured motorist endorsement, the phrase "any award" would refer to the total damages found by the arbitration panel. *See National Gen. Ins. Co. v. Riddell*, 705 N.E.2d 465, 467–68 (Ind.Ct.App.1998) (holding that insurance company could invoke the escape clause to demand a trial where the arbitrators awarded the insured $220,000.00). While Allstate could have provided that the terms "any award" or "any arbitration award" referred to its ultimate liability under the underinsured motorist endorsement, it did not. Bradtmueller's interpretation that the terms refer to the total amount of damages awarded by the panel is a reasonable one. Therefore, Indiana law requires that we adopt this interpretation.

The authority from other jurisdictions cited by Allstate is not particularly helpful in determining the result required by Indiana law. *See National Gen. Ins. Co.*, 705 N.E.2d at 467–68 (noting that other jurisdictions' treatment of escape clauses in the arbitration provisions of insurance policies are irrelevant because the only relevant case law is that of Indiana). Nevertheless, the *Krizanich v. Liberty Mut. Fire Ins. Co.*, 181 Ariz. 108, 887 P.2d 989, 991 (Ariz.App.1994) decision supports a conclusion opposite that propounded by Allstate. The arbitration provision under scrutiny in *Krizanich* reads as follows:

If we and an insured do not agree:

1. Whether that person is legally entitled to recover damages under [the underinsured motorist] endorsement; or

2. As to the amount of damages;

either party may make a written demand for arbitration.

*Id.* at 991. The *Krizanich* court noted that the phrase 'amount of damages' standing alone was at least as susceptible to the insured's interpretation as that of the insurance company. *Id.* at 991. However, the court found that the first section above defined the "scope of the arbitration" and thus that the interpretation of the term "amount of damages" referred "not to a claimant's damages as a whole" but only to the amount which could be recovered against the insurance company under the underinsurance endorsement. *Id.* at 991–92. In the present case, Allstate's policy neither defines the phrase "any arbitration award" nor provides any guidance regarding the intended scope of the arbitration provision. Therefore, we conclude that, had the *Krizanich* court analyzed the Allstate policy provisions at issue in the present case, it would have determined that the phrase "any arbitration award" was at least as susceptible to the insured's interpretation as that of the insurance company.

Additionally, the rationale of *Bauso v. Allstate Ins. Co.*, 227 A.D.2d 578, 643 N.Y.S.2d 190, 191 (1996), *appeal denied,* is flawed. The *Bauso* court noted that Allstate's underinsured motorist benefits were to be offset by the payments from the underinsured motorist. *Id.* at 191. Therefore, the *Bauso* court reasoned that "the amount of plaintiff's damages and the amount of compensation he has received must be determined before Allstate's liability under the uninsured/underinsured motorist endorsement can be calculated." *Id.* This is an example of the tail wagging the dog. The *Bauso* court's conclusion is incorrect because there is no need to determine the amounts to be set off under the reduction provisions of the policy where, as in *Bauso* and the present case, the interpretation of the policy reduction provisions are not disputed. The arbitrators need only determine the issue of liability (if necessary) and the amount of the insured's total damages. The parties can then apply the reduction provisions themselves. In any event, the policy language determines the work of the arbitration panel; the work of the arbitration panel does not drive the interpretation of the policy language.

The analysis in *D'Antonio v. State Farm Mut. Auto. Ins. Co.*, 262 N.J.Super. 247, 620 A.2d 1060 (1993) is similarly flawed. The *D'Antonio* court adopted the insurance company's interpretation of the undefined term "damages" under the rationale that, where the insured had been compensated by the underinsured motorist by the payment of New Jersey's minimum responsibility limit of $15,000.00, few arbitrator's awards would ever be binding because even an award of $1.00 would be above the mandatory coverage that every underinsured tortfeasor carries. *See id.* at 1061. In other words, the *D'Antonio* court determined that the provisions regarding the arbitration of underinsured coverage would be rendered nugatory where the insured had already received the statutory minimum from the underinsured motorist. This reasoning presupposes that the insured's total damages have already been reduced by the $15,000.00 payment. It is an arbitration award of $15,001.00 in total damages, not $1.00, that exceeds the New Jersey financial minimum. Moreover, this approach does not apply in Indiana because, as evidenced by the three cases from other states analyzed here, other states may have lower minimum mandatory financial responsibility limits than does Indiana. *See Krizanich,* 887 P.2d at 991 (Arizona's financial responsibility minimum was $15,000.00); *Bauso,* 643 N.Y.S.2d at 191 (New York's financial responsibility limit was $10,000.00); *D'Antonio,* 620 A.2d at 1060 (New Jersey's financial responsibility minimum was $15,000.00). Under the Allstate policy in the present case, where the insured is injured by a motorist from a state requiring only $15,000.00 in coverage, an arbitrator's award of Indiana's financial responsibility minimum of $25,000.00 in total damages would not be nugatory because it would be binding and require the insurance company to pay $10,000.00 in underinsured benefits. Thus, the *D'Antonio* rationale has no application under Indiana law.

Based on the above, Indiana law requires the adoption of Bradtmueller's interpretation of "any arbitration award" as referring to the arbitration panel's determination of the insured's total damages. Therefore, the trial court correctly denied Allstate's motion for summary judgment.

Affirmed.

NAJAM, J., concurs.

RATLIFF, Sr.J., dissents with separate opinion.

RATLIFF, Senior Judge, dissenting with opinion.

I respectfully dissent. Bradtmueller's argument before the trial court was that because the term "award" was not defined in the insurance policy, "award" meant the original amount awarded by the arbitration panel, before any credits were applied, or $50,-000.00. Therefore, under Bradtmueller's reasoning, Bradtmueller would be allowed the option to pursue a cause of action under the terms of the policy, the "escape clause," because the award amount exceeded the financial responsibility limits of $25,000.00. *See* Ind.Code § 9-25-2-3.

Insurance Company argued that Bradtmueller was precluded from bringing her cause of action because the amount awarded to her was less than the financial responsibility limits of $25,000.00. Insurance Company argued that the award amount was $22,-694.00, or the amount awarded after the credits were applied. I agree with Insurance Company.

An ambiguity does not exist simply because a controversy exists between the parties, with each favoring a different interpretation. *Stevenson v. Hamilton Mutual Insurance Company*, 672 N.E.2d 467, 471 (Ind.Ct.App.1996), *reh'g. denied, trans. denied.* Moreover, the failure to define a term in an insurance policy does not necessarily make it ambiguous. *Id.* An ambiguity exists only where the provision is susceptible to more than one reasonable interpretation and reasonably intelligent people honestly would differ as to its meaning. *Id.*

Insurance Company cites to *D'Antonio v. State Farm Mutual Automobile Insurance Company*, 262 N.J.Super. 247, 620 A.2d 1060 (1993) in support of its interpretation of the arbitration provision. In *D'Antonio*, the insured submitted a claim for underinsured motorist benefits after settling with the tortfeasor for his policy limits of $25,000.00. After unsuccessfully attempting to resolve their dispute over coverage, the insurer and insured submitted the issue of the claim to arbitration pursuant to the policy. The arbitrators awarded the insured the gross sum of $40,000.00. The award did not state so, but the insurer and insured did not disagree that the $25,000.00 recovered from the tortfeasor should be credited against the $40,000.00 award, and that the insurer, therefore, was liable for $15,000.00 The financial responsibility limits in New Jersey were $15,000.00.

The policy provided that the decision of the arbitrators was binding as to the amount of damages. The insured sued the insurer on the issue of the amount of damages claiming that because the $40,000.00 award was greater than the $15,000.00 financial responsibility limit, she was entitled to a trial. The trial court's decision that the insurer's liability, not the tortfeasor's liability, should determine whether the matter warrants a trial, was upheld on appeal. *Id.* at 1061.

In *Bauso v. Allstate Insurance Company*, 227 A.D.2d 578, 643 N.Y.S.2d 190 (N.Y.App. Div.1996), the insured claimed underinsured motorist benefits from the insurer after settling his claim against the tortfeasor for his policy limits of $50,000.00. The parties, after unsuccessfully attempting to agree on compensation, submitted the claim to arbitration pursuant to the policy terms. The arbitrators awarded the insured $60,000.00, but expressly stated that the amount did not account for offsets or other payments. A trial de novo was provided for in the policy if the arbitration award exceeded $10,000.00, the financial responsibility limits of New York.

The trial court's decision to allow a trial de novo was reversed on appeal. The New York Supreme Court, Appellate Division held that in order to receive a trial de novo, the *amount of benefits payable by the insurer* must exceed the minimum financial responsi-

bility limits in effect. *Id.* at 192. (Emphasis added). Since the amount of benefits payable by the insurer was $10,000.00, the arbitration amount was binding and a trial de novo was inappropriate.

Also persuasive, is the reasoning in *Krizanich v. Liberty Mutual Fire Insurance Company,* 181 Ariz. 108, 887 P.2d 989 (1994). In *Krizanich,* the insured settled with the tortfeasor for $40,000.00 of his $50,000.00 policy limits. The insured then claimed $100,000.00 in underinsured motorist benefits with his own insurer. The parties submitted the matter of damages in excess of $50,000.00 to arbitration. The arbitrators did not place a dollar amount on the insured's injuries, but found that the $40,000.00 settlement fully compensated the insured. Therefore, the insured was not entitled to underinsured motorist benefits.

The trial court's decision that the arbitration was binding was upheld on appeal. The insured had argued that he was entitled to a trial de novo because the settlement amount of $40,000.00 was in excess of the $15,000.00 financial responsibility limits of Arizona. The insurer successfully argued that the arbitrators had *awarded the insured nothing by way of underinsured motorist benefits,* and because that amount was less than $15,000.00, the award was binding on the parties. *Id.* at 991–992. (Emphasis added).

I disagree with the majority's application of *National General Insurance Company v. Riddell,* 705 N.E.2d 465 (Ind.Ct.App.1998), to the case at bar. In *National General,* the insurer sought a trial under the policy which provided for a trial in the event that arbitration resulted in an award in excess of the minimum financial responsibility limit. The arbitration award amount in *National General,* $220,000.00, was clearly in excess of the minimum financial responsibility limit in Indiana, $25,000.00. The panel in *National General,* determined that the insurer was entitled to a trial pursuant to the "escape clause" of the policy because of the amount of the award. *Id.* at 468. That panel held that the "escape clause" providing for a trial de novo after arbitration in certain situations was enforceable. *Id.* I do not find *National*

*General* to be dispositive of the issue in the case at hand.

I find persuasive the reasoning of *D'Antonio, Bauso,* and *Krizanich.* Therefore, I would hold that the amount which determines whether an arbitration award is in excess of the financial responsibility limits of Indiana is the amount payable to the insured after credit has been applied for amounts already recovered by the insured. To hold otherwise would defeat the purpose of the arbitration provision of the policy.

Bradtmueller would not be able to recover a judgment of $50,000.00 from Insurance Company. However, she would be entitled to recover $22,694.95, which is less than the financial responsibility limits of Indiana, from Insurance Company. The matter presented to the arbitrators is the amount due the insured pursuant to underinsured motorist coverage. It is that amount which should determine whether a trial de novo is warranted.

Bradtmueller was able to recover $25,000.00 under the tortfeasor's liability coverage limits. At issue between Bradtmueller and Insurance Company was the amount Insurance Company should pay out to Bradtmueller under the uninsured/underinsured motorist provision of her policy with Insurance Company.

In my opinion the arbitrators' finding is unambiguous. The arbitrators found Bradtmueller's damages to be $50,000.00. Bradtmueller had already received $27,305.05 under the tortfeasor's policy and medical pay benefits. The arbitrators determined that Insurance Company owed Bradtmueller $22,694.95. The arbitrators' job was to determine how much, if anything, Insurance Company owed to Bradtmueller, its insured. The $50,000.00 sum included amounts Bradtmueller was entitled to from sources other than Insurance Company. Again, it is my opinion that it defeats the purpose of the arbitration provision of the policy to hold, as the majority holds, that the tortfeasor's liability, and not the insurer's liability, determines whether the escape clause can be utilized.

I would hold that an arbitration award which becomes binding upon the parties and

precludes a trial de novo if the amount is less than the financial responsibility limits of Indiana, is determined by the amount the insurer must pay the insured pursuant to underinsured motorist coverage after credits for amounts already recovered by the insured have been applied. I would hold that the trial court erred in denying Insurance Company's motion for summary judgment.