**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 03 2014, 8:40 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**DAVID W. CRAIG**
**SCOTT A. FAULTLESS**
Craig Kelley & Faultless LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**FREEDOM D. VILLA**
Smith Fisher Maas & Howard, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

EUGENE SELVIDGE and ANN SELVIDGE,    )
                                     )
    Appellants-Plaintiffs,       )
                                     )
        vs.                  )    No. 18A02-1307-CT-627
                                     )
SECOND HARVEST FOOD BANK OF EAST     )
CENTRAL INDIANA, INC., and SELECTIVE )
INSURANCE COMPANY OF SOUTH           )
CAROLINA,                            )
                                     )
    Appellees-Defendants.        )

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne L. Vorhees, Judge
Cause No. 18C01-1202-CT-9

**February 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Eugene Selvidge ("Eugene") and Ann Selvidge (together, "Selvidge") appeal the trial court's order granting summary judgment in favor of Selective Insurance Company of South Carolina ("Selective"). Selvidge raises the following restated issue for our review: whether the trial court erred in granting Selective's motion for summary judgment and finding that there was no underinsured motorist or medical payments coverage available to Selvidge.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On November 24, 2010, Second Harvest Food Bank of East Central Indiana, Inc. ("Second Harvest") organized and operated a tailgate food distribution program at McCulloch Park in Muncie, Indiana. Eugene volunteered at the event on behalf of Second Harvest. While loading a vehicle with food, Eugene was struck by another vehicle participating in the food distribution and suffered a fractured fibula and shattered tibula plates in his right leg, requiring surgery.

The person operating the vehicle that struck Eugene, Dorraine Jennings ("Jennings"), was in line and participating in the tailgate food distribution program. Jennings had her foot on the brake as volunteers were putting items in the back seat of her vehicle. As Jennings turned to look to the back of her vehicle, her foot slipped off of the brake. Selvidge had his back to Jennings's vehicle as he was loading the truck in front of her with food. The back hatch of the truck, driven by Richard Wine ("Wine"), was open, and Selvidge was placing a load of food inside of the back of Wine's truck when he was struck by Jennings's vehicle. Jennings only had $25,000 of liability coverage.

2

At the time of the accident, Second Harvest was the named insured under Commercial Policy Number S 1876646 with effective dates of coverage from March 2, 2010 to March 2, 2011 ("the Policy"). The Policy, in part, provided Second Harvest with Business Auto Coverage ("BAC"), which included, by way of endorsements, Medical Payments ("Med Pay") coverage and Underinsured Motorist ("UIM") coverage. The Policy's BAC Med Pay insuring agreement provided as follows:

**A.    Coverage**

> We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident." We will pay only those expenses incurred, for services rendered within three years from the date of the "accident."

*Appellant's App*. at 319. The BAC Med Pay endorsement defined who is an insured, in pertinent part, as follows:

> 3.    Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

*Id*. The Policy's UIM insuring agreement provided as follows:

**A.    Coverage**

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle." The damage must result from "bodily injury" sustained by the "insured" and caused by an "accident," with an "underinsured motor vehicle."
>
> The owner's or driver's liability for this damage must result from the ownership, maintenance or use of the "underinsured motor vehicle."

*Id*. at 288. The BAC UIM endorsement defined who is an insured, in pertinent part, as follows:

If the Named Insured is designated in the Declaration as:

. . . .

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

    a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

*Id*. at 289.

For purposes of both Med Pay and UIM coverage, the BAC Declarations page identified "covered autos" as symbol 2 autos; the BAC Form defined symbol 2 autos as "only those 'autos' you own." *Id*. at 282, 292. The BAC Form defined "you" as the "Named Insured shown in the Declarations." *Id*. at 292. The Named Insured on the Policy was Second Harvest. *Id*. at 117.

Selvidge filed a complaint seeking coverage under the Policy's Med Pay and UIM portions of the BAC, contending that he qualified as an insured under the Policy. Selective filed a motion for summary judgment, arguing that Selvidge did not meet the definition of an insured because Eugene was not "occupying" a "covered auto" at the time of the accident. *Id*. at 85-86. The trial court granted summary judgment in favor of Selective and found that Selvidge was not entitled to coverage under the BAC Med Pay and UIM insuring agreements. Selvidge now appeals.

## DISCUSSION AND DECISION

On appeal from a grant of summary judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1173 (Ind.

4

Ct. App. 2012) (citing *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.,* 832 N.E.2d 559, 562 (Ind. Ct. App. 2005)), *trans. denied.* We stand in the shoes of the trial court and apply a *de novo* standard of review. *Id*. (citing *Cox v. N. Ind. Pub. Serv. Co.,* 848 N.E.2d 690, 695 (Ind. Ct. App. 2006)). Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Robson v. Tex. E. Corp.,* 833 N.E.2d 461, 466 (Ind.Ct.App.2005), *trans. denied.* Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM*, 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id*. (citing *Troxel Equip. Co. v. Limberlost Bancshares,* 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied.*)

A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Id.* Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court. *Id.* We will affirm upon any theory or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

5

The interpretation of an insurance policy is primarily a question of law and, therefore, is a question particularly suited for summary judgment. *Id.* at 1174 (citing *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 676 (Ind. Ct. App. 2001), *trans. denied*). "'Where there is an ambiguity, policies are to be construed strictly against the insurer.'" *Id.* (quoting *Lake States Ins. Co. v. Tech Tools, Inc.*, 743 N.E.2d 314, 318 (Ind. Ct. App. 2001)). "'An insurance contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning.'" *Id.* (quoting *Allstate Ins. Co. v. Bradtmueller,* 715 N.E.2d 993, 997 (Ind. Ct. App. 1999), *trans. denied).* An ambiguity does not exist, however, merely because the parties favor a different interpretation. *Id.* Where terms are unambiguous, they should be given their plain and ordinary meaning. *Id.* (citing *Farmers Ins. Exch. v. Smith,* 757 N.E.2d 145, 149 (Ind. Ct. App. 2001), *trans. denied*). A court should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.*

Selvidge argues that the trial court erred when it granted summary judgment in favor of Selective and found Selvidge was not entitled to coverage under the BAC Med Pay and UIM insuring agreements. Specifically, Selvidge contends that the BAC Declarations page is ambiguous because it initially restricts Med Pay and UIM coverage to apply to "Owned 'Autos' Only," *Appellant's App.* at 282, 292, but then broadened the coverage to include "Non-Owned Auto Coverage" by listing "Hired Auto and Non-Owned Auto Coverage" in the coverage schedule. *Id.* at 282. Based on his conclusion that Med Pay and UIM coverage applies to non-owned vehicles, Selvidge asserts that the vehicles participating in the tailgate food distribution program meet the definition of "Non-Owned 'Autos,'" *id*. at

6

292, because they are non-owned vehicles used in connection with Second Harvest's business during the time that the volunteers are loading the vehicles with food. Selvidge further argues that the evidence showed that he was occupying a non-owned auto at the time that the accident occurred because, when he was struck, a portion of his body was inside the back hatch of Wine's truck as he loaded food inside the back of the truck.

On the BAC Declarations page, the Coverage Schedule set forth the coverages provided, the limits of each coverage, and the symbol that indicates what constitutes a covered auto for each coverage. *Id*. at 282. For both Med Pay and UIM coverage, the covered autos were indicated by symbol 2, which is defined as only those autos owned by Second Harvest. *Id*. at 282, 292. Selvidge is correct that included in the list of coverages on the BAC Declaration page was "Hired Auto and Non-Owned Auto Coverage." *Id*. at 282. However, later in the Declarations page, in Items 4 and 5, the schedules for hired autos and non-owned autos respectively, it stated that the coverage for such autos was liability coverage. *Id*. at 283. This is relevant because liability coverage is a third-party coverage that is different from first-party coverage, which is what the Med Pay and UIM coverages are. "First-party insurance is insurance which applies to the insured's *own property or person.* In contrast, liability insurance indemnifies against liability on account of injuries to the person or property of another." *Wagner v. Yates*, 912 N.E.2d 805, 810 (Ind. 2009) (emphasis in original) (internal quotations marks omitted) (citing *Gen. Housewares Corp. v. Nat'l Sur. Corp.*, 741 N.E.2d 408, 415 n.5 (Ind. Ct. App. 2000)). Here, Selvidge is seeking first-party coverage under both Med Pay and UIM coverage and not liability coverage, making the hired and non-owned auto coverage irrelevant to the

7

coverage sought. The fact that the BAC Declarations page included "Hired Auto and Non-Owned Auto Coverage" did not have any bearing on the Med Pay and UIM coverage or the vehicles that qualify as covered autos under those coverages.

In order to qualify as an insured under both the BAC Med Pay and UIM insuring agreements, Selvidge must have been "occupying" a "covered auto" at the time of the accident. *Appellant's App*. at 289, 319. Both the Policy's Med Pay and UIM coverage defined "occupying" as "in, upon, getting in, on out or off." *Id*. at 291, 320. At the time of the accident, Eugene was standing between two vehicles and was in the process of loading food into the open back hatch of Wine's truck when he was struck by Jennings's vehicle. At the time of the accident, Eugene was not in either of the vehicles; neither was he upon either of the vehicles. At the time he was injured, Eugene was not getting in, getting on, getting out of, or getting off of either vehicle. Rather, he was merely standing between the two vehicles when the accident occurred. Therefore, Eugene was not "occupying" Wine's truck at the time of the accident.

Further, even if Eugene was deemed to be "occupying" Wine's truck at the time of the accident, in order to qualify as an insured under both the BAC Med Pay and UIM insuring agreements, Wine's truck must have been a "covered auto." *Id*. at 289, 319. On the BAC Declarations page, it listed only symbol 2 autos as being covered for Med Pay and UIM coverage. Symbol 2 autos were described as only those autos owned by Second Harvest. *Id*. at 292. Selvidge concedes that Wine's truck was not owned by Second Harvest. *Appellant's Br*. at 16. Therefore, Wine's truck was not a covered auto, and

8

Eugene did not qualify as an insured under the Med Pay and UIM coverages of the Policy's

BAC Form. The trial court did not err in granting summary judgment in favor of Selective.

Although we affirm the trial court and find that Selvidge did not qualify for coverage under the Med Pay and UIM coverages, our review of the Policy and the coverages under the BAC Form raises significant concerns as to the coverage provided, particularly as to who is an insured under the Med Pay coverage where the Policy refers to "you." "You" is defined as "the Named Insured in the Declarations," which is Second Harvest. *Appellant's App*. at 117, 292. However, the Policy does not state if Second Harvest only refers to the corporate entity or if it includes individuals such as officers, employees, or volunteers. If it only refers to the corporate entity, this creates problems with the definition of who is an insured. [1] However, these issues were not raised or addressed by either party, and we will not undertake the burden of developing an argument on behalf of a party on appeal. *Hall v. State*, 837 N.E.2d 159, 160 (Ind. Ct. App. 2005) (citing *Hubbard v. Hubbard*, 690 N.E.2d 1219, 1220 (Ind. Ct. App. 1998)), *trans. denied*.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.

---

[1] For example, an insured is defined under an unchallenged section of the Med Pay coverage as "[y]ou while 'occupying' or, while a pedestrian, when struck by any 'auto.'" *Appellant's App*. at 319. If Second Harvest is only the corporate entity, then this section would be meaningless as a corporate entity cannot occupy a vehicle or be a pedestrian.

9