**LAKE STATES INSURANCE COMPANY, Appellant–Plaintiff,**

v.

**TECH TOOLS, INC., Mikel Binder, Estate of Mary K. Binder and Lincoln Steinhiser, Appellees–Defendants.**

**No. 71A05–0001–CV–32.**

Court of Appeals of Indiana.

Jan. 26, 2001.

Thomas Todd Reynolds, Threlkeld &
Reynolds, LLP, Indianapolis, IN, Attorney
for Appellant.

Richard W. Morgan, Jeffrey J. Stesiak, Sweeney, Pfeifer, Morgan & Stesiak, South Bend, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE [1]

Appellant–Plaintiff, Lake States Insurance Company (Lake States), appeals the trial court's Order denying Lake States' Motion for Summary Judgment and granting the Cross Motion for Summary Judgment filed on behalf of Mikel Binder (Binder), the Estate of Mary K. Binder (Mary), and Tech Tools, Inc. (Tech Tools) (hereinafter referred to collectively as "Defendants"), finding that Mary was covered by the Uninsured Motorist Endorsement of the Lake States automobile liability policy at the time and place of the December 18, 1997, collision.

We reverse.

### ISSUE

Lake States raises two issues for our review, which we consolidate and restate as: whether the trial court erred by granting summary judgment in favor of Defendants by finding that Mary was "occupying" the vehicle as that term is defined in Lake States' automobile insurance policy.

### FACTS AND PROCEDURAL HISTORY

On December 18, 1997, Mary and Binder attended a Christmas party at the Louvered Door Restaurant in South Bend, Indiana, hosted by Tech Tools, Inc., Binder's employer. The Binders traveled to the party in a vehicle owned by Tech Tools that was regularly used by Binder and insured by Lake States. The Binders arrived at the party at approximately 7:00 p.m. and left the party to return home at approximately 11:15 p.m. However, the vehicle was parked across Western Avenue, a four-lane road. Binder safely crossed all four lanes of traffic, but after safely cross-

ing two of the four lanes of traffic, Mary was struck and killed by a hit and run vehicle. Mary was approximately sixty (60) feet from the vehicle. Lincoln Steinhiser (Steinhiser) was the driver of the hit and run vehicle and had no automobile liability insurance on his vehicle at the time of the accident. Nevertheless, Steinhiser did not appear in the trial court proceedings, and is not a party to this appeal.

Prior to the accident, Lake States issued uninsured motorist coverage for the vehicle. The uninsured motorist endorsement of the policy provided in part as follows:

B.  Who is an insured

1.  You

2.  If you are an individual, any "family member."

3.  Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4.  Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

(R. 38–39). The term "occupying" as used in the uninsured motorist coverage endorsement is defined as "in, upon, getting in, on, out or off." (R. 40).

On August 7, 1998, Lake States filed a complaint for declaratory judgment seeking judicial determination that it was not obligated to provide uninsured motorist coverage to the Defendants. On August 20, 1998, the Defendants filed a counterclaim against Lake States requesting a judgment that coverage existed and that Lake States must pay uninsured motorist benefits.

On September 16, 1999, Lake States filed its motion for summary judgment, and on November 16, 1999, Binder and Mary filed a cross-motion for summary

---

1.  We heard oral argument on October 24, 2000, in Indianapolis, Indiana.

judgment and a response to Lake States' Motion for Summary Judgment. A hearing on the cross-motions for summary judgment was conducted on December 14, 1999. On December 28, 1999, the trial court denied Lake States' Motion for Summary Judgment and granted the Defendants' Cross Motion for Summary Judgment, finding that Mary was covered by the Uninsured Motorist Endorsement of the Lake States automobile liability policy at the time and place of the December 18, 1997, collision. The trial court based its conclusion on *Miller v. Loman*, 518 N.E.2d 486 (Ind.Ct.App.1987), *reh'g denied.* Specifically, the trial court concluded:

\* \* \*

9. Indiana, in the case of *Miller v. Loman*, 518 N.E.2d 486, at 491 (Ind. App.1987) has adopted a four-factor test for determining whether or not a person is "occupying" a vehicle. The factors are:

   a. The distance between the accident and the vehicle.

   b. The time separating the accident and the exit (here the intended entering) of the vehicle.

   c. The individual's opportunity to reach a zone of safety.

   d. The individual's intentions in relation to the automobile.

10. This Court specifically finds that, at the time of the accident in question:

   a. Mrs. Binder's distance from the vehicle at the time of the accident falls within a reasonable geographic proximity.

   b. Mrs. Binder was reasonably close in time to entering the vehicle.

   c. Mrs. Binder was headed to a zone of safety at the time she was struck by the hit and run vehicle.

   d. Mrs. Binder was crossing Western Avenue for the sole purpose of getting into the insured vehicle to further occupy and use the vehicle.

   e. Mrs. Binder was attempting to reach the insured vehicle at the time of the accident and was vehicle oriented. Thus, the road itself was a mere hindrance between her and her goal.

   f. Mrs. Binder's activity in walking to the vehicle was essential in order to use the insured vehicle, i.e., Mrs. Binder had to cross Western avenue to get to the same side of the street as the insured vehicle.

WHEREFORE, this Court, on the basis of the foregoing Findings of Fact and Conclusions of Law holds that Mrs. Binder was "occupying" the insured vehicle at the time of the accident within the definition of "occupying" as set forth in the Uninsured Motorist Endorsement of the Lake States Insurance Company automobile liability policy.

(R. 264–265). Lake States now appeals.

## DISCUSSION & DECISION

### Standard of Review

When reviewing the grant of a summary judgment motion, we apply the same standard applicable in the trial court. Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We do not weigh the evidence, but will consider the facts in the light most favorable to the non-moving party. *Grose v. Bow Lanes, Inc.*, 661 N.E.2d 1220, 1224 (Ind.Ct.App.1996). We must reverse the grant of a summary judgment motion if the record discloses an incorrect application of the law to those facts. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

On appeal from a grant of summary judgment, the burden is on the appellant to prove the trial court erred in determining there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of

law. *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 813 (Ind.Ct.App.1995), *reh'g denied.* A fact is "material" for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action. *Weida v. Dowden*, 664 N.E.2d 742, 747 (Ind.Ct.App.1996), *trans. denied.* A factual issue is "genuine" if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Id.*

In this case, the trial court entered specific findings of fact and conclusions of law thereon. Specific findings and conclusions are neither required nor prohibited in the summary judgment context. *Althaus v. Evansville Courier Co.*, 615 N.E.2d 441, 444 (Ind.Ct.App.1993), *reh'g denied.* Although specific findings aid appellate review, they are not binding on this court. *Id.* Instead, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh evidence, but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh'g denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

The interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly suited for summary judgment. *Transcontinental Technical Services, Inc. v. Allen*, 642 N.E.2d 981, 983 (Ind.Ct.App.1994), *trans. denied.* Where there is an ambiguity, policies are to be construed strictly against the insurer. *American States Insurance Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind.1996), *reh'g. denied.*

The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Hendricks County Bank & Trust Co. v.*

*Guthrie Bldg. Materials, Inc.*, 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* Thus, if the facts most favorable to Lake States will not support the conclusion that Mary was an occupant of the vehicle, we will reverse.

### "Occupying"

The threshold issue we must determine is whether "occupying" as defined in the Uninsured Motorist Endorsement of the Lake States policy is ambiguous. Both parties agree that the only definition of "occupying" as applied to our case is whether Mary was "getting in" to the vehicle at the time she was struck and killed by the hit and run vehicle. Therefore, we must determine whether "getting in" is ambiguous or not.

Lake States argues that the terms "occupying" or "getting in" are not ambiguous, and therefore, we must apply the dictionary definition of "getting in" or "occupying" so as not to employ an interpretation analysis of the insurance contract, which would rewrite the insurance policy. Specifically, Lake States contends that no reasonable person could conclude that a person crossing a street, sixty (60) feet from a vehicle, was "occupying" or "getting in" the vehicle. Therefore, Lake States wishes for us to apply the dictionary definitions of "occupying" and "getting in."

Specifically, Black's Law Dictionary 1079 (6th ed.1990), defines "occupy" as "to take or enter upon possession of; to hold possession of; to hold or keep for use; to possess; to tenant; to do business in; to take or hold possession. Actual use, possession, and cultivation." In addition, the American Heritage Dictionary of the English Language 762 (3rd ed.1996), defines "get in" in pertinent part, as "1. a. to enter. b. to arrive." and defines "occupy" as "1. to fill up (time or space) 2. to dwell or reside in 3. to hold or fill (an office or a position) 4. to seize possession of and maintain control over by or as if by con-

quest 5. to engage, employ, or busy (one-self)" *Id.* at 1251.

On the other hand, the Defendants argue that the term "occupying" as defined by the automobile insurance policy is ambiguous, and therefore, a liberal interpretation of the insurance policy is required. Specifically, the Defendants contend that a dictionary definition of "occupying" improperly broadens the definition of "occupying" because the term is defined by the insurance policy itself. Further, the Defendants claim that Lake States' reliance on cases from outside jurisdictions holding that "occupying" is an unambiguous term is misplaced because those cases focused upon a physical contact requirement for occupancy, which has not been enunciated by Indiana courts. We agree that no physical contact is required for occupancy, and find *Miller* instructive. Therefore, we will refrain from relying on extra-jurisdictional cases to determine the case at hand.

■■■ Both parties recognize that the initial inquiry is whether the operative definition of "occupying" in the Uninsured Motorist Endorsement is ambiguous. If the phrase is ambiguous, the contract must be construed in favor of the policyholders. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind.1992). If, however, the phrase is unambiguous, the contract applies according to the plain and ordinary meaning of the terms, even if the terms limit coverage. *Hastings Mut. Ins. Co. v. Webb*, 659 N.E.2d 1049, 1051 (Ind.Ct.App.1995); *Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind.1984). The fact that the parties espouse differing interpretations of the terms does not mean the contract is ambiguous. *Meridian Mut. Ins. Co. v. Cox*, 541 N.E.2d 959, 961 (Ind. Ct.App.1989), *trans. denied.* An insurance contract is ambiguous only if reasonable people reading the contract would differ as to the meaning of the terms. *Id.*

In the case at hand, Lake States relies on the case of *Gleason v. Merchants Mut. Ins. Co.*, 589 F.Supp. 1474 (D.R.I.1984), to argue that "occupying" is not an ambiguous term. In that case, a woman's car ran out of gas and she walked to a nearby restaurant to telephone for help. *Id.* at 1476. After doing so, she crossed the street to return to her car. *Id.* When she was within four to five feet from her automobile, an uninsured vehicle narrowly missed hitting her and crashed into the rear of her car. *Id.* The woman brought suit for mental anguish, and the issue turned upon whether she was occupying the vehicle at the time of the incident in order to be entitled uninsured motorists coverage. *Id.* at 1478. In that case, the policy defined "occupying" to mean "in, upon, getting in, on, out or off." *Id.* The Rhode Island District Court held that the term "occupying" is not ambiguous, and stated:

> The definition of "occupying" is not hedged in by legalistic gobbledygook, but is in plain and simple English. Indeed, it is difficult to hypothesize how the insurer could more lucidly have defined the acts in question. In everyday usage, "getting in" is tantamount to "entering", and Sharon was four or five steps shy of entering the parked vehicle when the incident occurred.

> The plaintiffs would have the Court equate "getting in" with "approaching"; but this would, in effect, require a judge-made redrafting of the policy. Courts should refrain from conjuring up ambiguities when none exist and from saddling insurance carriers with liabilities not fairly imposed by the insurance contract. The courts must abjure unnecessary mental gymnastics which give the terms of the policy a forced or distorted construction . . . . the policy provisions should be accorded their plain, ordinary, usual and literal meaning.

*Id.* (citations omitted). Therefore, Lake States argues that "occupying" and "getting in" are not ambiguous terms and should be given their plain, ordinary, and common meaning.

The Defendants argue that Lake States' reliance on *Gleason* is misplaced because

that case focused on a physical contact requirement while Indiana courts have not required such a factor. Specifically, the Defendants contend that in *Miller*, this court found that authorities which have looked to the immediate relationship the claimant had to the vehicle within a reasonable geographic area, rather than mere time and distance in determining whether an injured party was "alighting from" or "getting out of" an automobile, are better reasoned and more consonant with Indiana authority. *Miller*, 518 N.E.2d at 490. We find the terms "occupying" and "getting in" to be unambiguous irrespective of *Gleason*, and instead we rely on *Miller* and the plain meaning of the terms to determine whether Mary was either "occupying" or "getting in" the covered vehicle.

However, we adopted seemingly contradictory language in *Miller*. In that case, we adopted the following language: "a person has not ceased 'occupying' a vehicle until he has severed his connection with it—i.e., when he is on his own without any reference to it. If he is still vehicle-oriented he continues to 'occupy' the vehicle." *Id.* at 489 (citations omitted). Therefore, *Miller* appears to hold that we are to apply four factors to determine whether an individual is occupying a vehicle, however, occupancy does not cease until that person has severed all connection to the vehicle. Nevertheless, this connection to the vehicle seems to be something different than simply physical contact, but instead, seems to be some sort of metaphysical connection.

Further, the Defendants argue that by suggesting an application of the dictionary definition of "occupying," Lake States has erroneously broadened the definition of the term. Specifically, the Defendants contend that by applying the dictionary definition of "occupying," the definition of the term is expanded beyond what was intended in the insurance policy written by Lake States. However, this argument seems to beg the question of the ambiguity of the term "occupy" because in order to determine the ambiguity of the term, we must analyze the term's common and ordinary usage.

## "Getting In"

As previously discussed, the only definition of "occupy" contained in the insurance policy that could be applied to the facts of this case is "getting in." Therefore, if we find that "occupying" and "getting in" are ambiguous terms, we must then turn to an analysis of whether Mary was in fact "occupying" the vehicle at the time of the accident.

Lake States argues that even if we determine that the terms "occupying" and "getting in" are ambiguous, no construction of the policy terms could qualify Mary as an insured at the time of the accident. Specifically, Lake States contends that the cases relied upon by the Defendants, including *Miller* did not analyze the term "occupying" in context of "getting in," but instead, interpreted "occupying" in the context of "alighting from" and "getting out of." Further, Lake States claims that although no Indiana case expressly addresses the application of the term "getting in," there are extra-jurisdictional cases that address this term and hold that to qualify for uninsured motorist coverage, the insured must demonstrate more than approaching with the subjective intent of entering the vehicle. Nevertheless, as we previously stated, we will refrain from relying on extra-jurisdictional cases, but rather find *Miller* instructional.

In *Miller*, 518 N.E.2d 486, this court held that a passenger who was struck by an uninsured motorist after he had left the vehicle and traveled approximately thirty (30) feet from the vehicle in order to kick a muffler to the side of the road was not "getting into or out of" the vehicle for purposes of the uninsured motorist provision in the driver's policy. *Id.* at 488. In that case, we analyzed several cases from out of state jurisdictions that dealt with uninsured motorist coverage for individuals "alighting from" or "getting out of" vehicles when the incident occurred to de-

velop a four factor test to determine whether an individual is "alighting from" or "getting out of" an automobile:

We believe the proper determination of whether an individual is "alighting from" or "getting out of" an automobile requires the examination of several factors which may establish the existence of a relationship between the individual and the insured automobile. These factors include: the distance between the accident and the automobile; the time separating the accident and the exit from the automobile; the individual's opportunity to reach a zone of safety; and the individual's intentions in relation to the automobile. These factors will, of course, have greater or lesser weight depending upon the circumstances of each individual case. There may be instances in which one of the factors may be determinative, such as where the accident occurs at such a great distance from the automobile as to render it unreasonable to assume the process of alighting had not been completed.

*Id.* at 491–492.

However, we denied Miller coverage because he testified that he never intended to do anything but kick the muffler off the road and return to the truck. *Id.* at 492. Therefore, because Miller never intended to reach a zone of safety, he had clearly embarked upon a course of conduct distinct from acts reasonably necessary to make an exit from the car. *Id.*

Nevertheless, in our case, the trial court applied the criteria from *Miller,* and now the Defendants wish for us to do the same. Specifically, the Defendants argue that Mary's acts were directly connected with the insured vehicle and were essential to the use of the vehicle. It was necessary for Mary to cross the street in order to reach the insured vehicle and she was only sixty (60) feet from the vehicle.

 Therefore, based on the foregoing, our analysis must begin with a determination of whether "occupying" as defined in the uninsured motorist policy is ambiguous. If the term is ambiguous, we must then turn to an analysis of the facts involved. However, if we find that the term is not ambiguous, our analysis must then turn to whether Mary's acts fit within the dictionary definition of "occupying" or "getting in."

Although we find the four factors enunciated in *Miller* to be instructive, we conclude that the idea of extending coverage for individuals "getting in" or "occupying" to a "zone" around the insured vehicle eviscerates the contractual language that defines "occupying" a covered vehicle to mean "in, upon, getting in, out or off." Further, as this court noted in *Miller,* each factor may have greater or lesser weight depending on the circumstances of each individual case. Therefore, in the case at hand, we find Mary's distance from the vehicle to be of a particularly greater determinative weight in finding that Mary was neither "occupying" nor "getting in" the vehicle when she was sixty feet from the vehicle. An examination of the dictionary definition of these terms certainly does not apply to an individual sixty (60) feet from the covered vehicle. Specifically, we hold that "getting in," means entering, requiring a closer proximity than sixty feet. Thus, we find that the term "occupying" is not ambiguous, and therefore, Mary's acts and geographic proximity of sixty feet do not fit within the policy language.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred by granting summary judgment in favor of Defendants by finding that Mary was "occupying" the vehicle as that term is defined in Lake States' automobile insurance policy.

Reversed.

BAILEY, J., concurs.

SHARPNACK, C.J., concurs in result.