STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY,
Appellant–Defendant,

v.

Jelana Hobbs D'ANGELO,
Appellee–Plaintiff.

No. 73A04–0612–CV–703.

Court of Appeals of Indiana.

Nov. 9, 2007.

John D. Cochran, Jr., Hackman Hulett & Cracraft, LLP, Indianapolis, IN, Attorney for Appellant.

W. Scott Montross, Montross, Mueller, Mendelson & Kennedy, John F. Townsend III, Townsend Law Firm, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

State Farm Mutual Automobile Insurance Company ("State Farm") appeals the trial court's entry of summary judgment in favor of Jelana Hobbs D'Angelo and against State Farm.

We reverse and remand.

### ISSUES

1. Whether coverage for all claims due to bodily injury under State Farm's policy has been exhausted under the limits of liability.

2. Whether State Farm's policy is in violation of Indiana Code section 27–7–5–2.

### FACTS

On May 23, 2001, fourteen-year-old Joshua Hobbs was riding his bicycle through an intersection in Shelbyville when Helen Goldey disregarded a stop sign and struck him with her vehicle. Although D'Angelo, Joshua's mother, did not witness the accident, she came upon the scene shortly thereafter. D'Angelo attempted to lift Goldey's vehicle off of Joshua and witnessed emergency personnel's attempts to free Joshua from the wreckage.

Joshua sustained serious injuries and ultimately died from his injuries. D'Angelo subsequently suffered emotional distress, which manifested itself in bouts of uncontrollable crying, loss of appetite, sleeplessness, and the inability to concentrate. D'Angelo did not seek medical treatment for her symptoms.

At the time of the accident, Goldey, who was at fault for the accident, maintained automobile-insurance coverage through a policy issued by Shelter Mutual Insurance

Company ("Shelter"). The policy provided liability limits for bodily injury in the amount of $25,000 per person and $50,000 per accident. State Farm authorized D'Angelo to settle her claims against Shelter and to release Goldey from liability. On June 12, 2002, Shelter tendered $25,000 as satisfaction for Joshua's wrongful death and $25,000 as satisfaction of D'Angelo's claim for negligent infliction of emotional distress, thereby exhausting the liability limits under Goldey's policy.

Also at the time of the accident, D'Angelo maintained automobile-insurance coverage through a policy issued by State Farm. That policy provided liability limits for underinsured-motorist coverage in the amount of $100,000 for each person and $300,000 for each accident. The policy defined "bodily injury" as follows: **"Bodily Injury**—means bodily injury to a *person* and sickness, disease or death which results from it." (App. 17). Regarding the limits of liability for underinsured-motorist coverage, the policy provided as follows:

> The amount of coverage is shown on the declarations page under "Limits of Liability—W—Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person*. *"Bodily injury to one person"* includes all injury and damages to others resulting from this *bodily injury*. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

(App. 29). The policy further provided that State Farm

> will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and caused

by accident arising out of the operation, maintenance or use of an *underinsured motor vehicle.*

(App. 27).

In October of 2001, State Farm agreed to pay $75,000 in settlement of the wrongful death claim. State Farm, however, denied D'Angelo's claim for emotional distress "on the basis that her claim arose from the bodily injury of Joshua and that she had not suffered a separate bodily injury independent of the bodily injury suffered by Joshua." (App. 123).

On May 7, 2003, D'Angelo filed a complaint against State Farm, asserting that she was "entitled to recover the proceeds of the underinsured motor vehicle coverage" contained in State Farm's policy. (App. 50). State Farm denied D'Angelo's allegation.

In October of 2005, the parties filed a joint statement of undisputed material facts for purposes of summary judgment. The parties stipulated that D'Angelo had a "legally valid claim against Helen Goldey for negligent infliction of emotional distress." (App. 81). The parties, however, did not stipulate as to whether D'Angelo had a claim for negligent infliction of emotional distress under the "modified impact rule" or the "bystander rule," which is "an exception to the physical impact requirement for the negligent infliction of emotional distress." [1] *Atlantic Coast Airlines v. Cook,* 857 N.E.2d 989, 997 (Ind.2006).

On December 19, 2005, D'Angelo filed a motion for summary judgment, asserting that "[t]he negligent infliction of emotional distress claim qualifies as a 'bodily injury' under the State Farm insurance policy and is therefore covered under the policy." (App. 53). D'Angelo further asserted that "[t]o the extent the State Farm insurance policy contains any exclusions attempting to avoid coverage, the exclusions violate public policy codified at I.C. 27–7–5–2 which prohibits any limiting language in the insurance contract which has the effect of providing less protection than what is obligatory by the statute." (App. 54). Finally, D'Angelo asserted that "any language in the State Farm insurance policy," upon which State Farm relies to avoid coverage, "renders the policy illusory requiring an interpretation in favor of coverage." (App. 54).

On January 27, 2006, State Farm filed its motion for summary judgment and combined memorandum thereon and brief in opposition to D'Angelo's motion for summary judgment. State Farm did not dispute D'Angelo's claim of negligent infliction of emotional distress. State Farm, in fact, "accept[ed] that [D'Angelo's] claim for emotional distress is a covered loss under its underinsured motorist policy." (App. 126). State Farm, however, argued that D'Angelo's claim did not constitute an "independent 'bodily injury' entitled to its own 'per person' limits," but rather was "included in Joshua's 'per person' limits for the 'bodily injury.'" (App. 126). Specifically, State Farm asserted that D'Angelo "was a bystander, was not involved in the accident, and did not receive an impact and is therefore unable to fulfill the independent requirement that her emotional distress constitutes 'bodily injury.'" (App. 149).

---

1. In her motion for summary judgment, D'Angelo asserted her claim for negligent infliction of emotional distress under both the "modified impact rule" and the "bystander rule." State Farm, in its motion for summary judgment, argued that D'Angelo did not satisfy the requirements for the "modified impact rule" because the impact—attempting to lift the vehicle—did not "take place as part of the accident," but rather occurred after the accident. (App. 144).

Regarding whether State Farm's policy violated Indiana Code section 27–7–5–2, State Farm "pointed out that the Underinsured Motorist Statute only pertains in pertinent part to 'bodily injuries.'" (App. 149). Furthermore, State Farm argued that even if D'Angelo's emotional distress constituted a bodily injury, State Farm's limitations were not contrary to law because "the policy clause did not wholly preclude coverage for the loss, but merely limited its liability by treating the claim as part of the damages arising from the bodily injury to another." (App. 150).

As to whether the language of State Farm's policy is ambiguous or illusory, State Farm maintained that "there is no possible ambiguity since [D'Angelo's] emotional distress does not constitute 'bodily injury' and could not under any circumstances be entitled to separate limits." (App. 151). In the alternative, even if emotional distress is considered a bodily injury, State Farm maintained that its policy "plainly restricts coverage to those who have sustained bodily injury and includes within that coverage any derivative" or consequential claims. (App. 152).

D'Angelo filed her response to State Farm's motion for summary judgment and reply to State Farm's response on April 21, 2006. D'Angelo asserted that while she

> believes her negligent infliction of emotional distress claim does meet the definition of "bodily injury" in State Farm's insurance policy, the real issue before the Court is whether the claims of [D'Angelo] meet the *statutory* definition of "bodily injury, sickness or disease" contained in the UIM statute since any more restrictive policy language is automatically void and against public policy.

(App. 165). D'Angelo asserted that she did meet the statutory definition because her "post accident contact with the vehicle at the scene following a collision with the [her] loved one is sufficient to satisfy the modified impact rule." (App. 166).

The trial court held a hearing on the parties' motions on May 4, 2006. On August 30, 2006, the trial court entered its findings of fact and conclusions of law. The trial court adopted the parties' joint stipulation of undisputed material facts and found the following:

1) Plaintiff sustained a valid covered loss for her emotional distress as a result of the tortfeasor's (Helen Goldey) negligence.

2) Plaintiff has a legally recognizable claim for negligent infliction of emotional distress under the modified impact rule.

3) The modified impact rule maintains the requirement of a direct physical impact. The impact need not cause a physical injury to plaintiff; nor does the emotional trauma suffered by plaintiff need to result from a physical injury caused by the impact.

4) The impact may be minimally classified as slight or rather tenuous.

5) [A] plaintiff may meet a second test, a direct involvement test, which requires no physical touching or impact but may apply when a plaintiff witnesses or comes upon the scene of an accident involving a loved one and caused by a defendant's negligence.

6) Plaintiff's negligent infliction of emotional distress claim qualifies as an independent bodily injury under the State Farm policy at issue. State Farm's policy defines bodily injury as "bodily injury to a person and sickness, disease or death which results from it."

7) The exclusionary provision contained on page 15 of the State Farm policy under the section entitled "Limits of Liability—Coverage W" … does not ap-

ply. I.C. 27–5–7–2[sic] precludes this language as void and against public policy, and the language is ambiguous and illusory.

8) Underinsured motorist (UIM) coverage is mandated by I.C. 27–5–7–2[sic]; its purpose is to provide indemnification for individuals in the event negligent motorists are not adequately insured for damages that results [sic] from motor vehicle accidents.

9) The underinsured motorist statute is a mandatory coverage, full recovery, remedial statute.

10) Any limiting language in the insurance contract which has the effect of providing less protection than that made obligatory by statute is contrary to public policy and of no force and effect.

11) Nothing in I.C. 27–7–5–2 suggests that the legislature intended to exclude the emotional distress component of car accident victim's damages from underinsured motorist coverage.

12) Plaintiff fits the statutory definition of persons legally entitled to recover underinsured motorist coverage benefits under I.C. 27–7–5–2.

13) The exclusion relied upon by State Farm is ambiguous and illusory. The policy defines "person" as follows: "Person means a human being." The policy defines bodily injury as follows: "Bodily injury means bodily injury to a person and sickness, disease or death which results from it."

The policy further provides, in the portion dealing with limits of liability for underinsured motorist coverage (Coverage W): "The amount of coverage is shown on the declaration page under 'Limits of Liability—W—Each Person, Each Accident.' Under 'Each Person' is the amount of coverage for all damages due to bodily injury to one person."

The policy further provides "Under 'Each Accident' is the total amount of coverage, subject to the amount shown under 'Each Person', for all damages due to bodily injury to two or more persons in the same accident."

14) The above coverage clearly indicates that a "person" is a single individual and that "bodily injury" only applies to single individuals. It also indicates that each single individual has a separate "each person" limit on the amount of coverage for "bodily injury". Finally, it indicates that the amount of coverage for "each person" is limited by a further liability limit for "each accident" when two or more persons are injured in the same accident.

15) The policy creates a conflict with the singular definitions of "person" and "bodily injury" as well as the language providing coverage for "each person" and "each accident" by virtue of the language which states: "Bodily injury to one person includes all injury and damages to others resulting from this bodily injury." The definitions of "person" and "bodily injury" which require a singular construction cannot be reconciled with the language in paragraph 14 herein which states that injury to one person actually includes "all injury and damages to others." The plain meaning of "one person" necessarily precludes an interpretation suggesting it means multiple people. An ambiguity exists because the definition of "person" in the policy conflicts with the purported exclusionary language applying the term to mean multiple people[.]

16) The split-limits language of the insurance policy gives coverage to "each person"; it provides that "each person" is entitled to receive the amount of coverage for all damages due to bodily injury to one person. An ambiguity is created which cannot be reconciled with the

insuring language when the policy later attempts to provide that coverage for "each person" or "human being" for "bodily injury" actually means that the single limit coverage applies to more than one person. The policy cannot purport to give separate coverage to "each person" and then say that "each person" is really multiple people, especially when the term "person" is defined in the singular.

17) The policy language is also ambiguous wherein it states the amount of coverage for "each accident" is the total amount of coverage subject to the limits for "each person" for all damages arising out of the accident where two or more persons are involved. One interpretation of this language means that each person has separate limits which are only subject to the overall policy limits pertaining to each accident. State Farm contends that the amount for "each accident" is limited to the amount for a single person despite the existence of multiple injuries to multiple persons.

Insurance policy exclusions must be strictly construed against an insurer, in favor of coverage, even without any ambiguity. If ambiguity exists, the policy must be strictly construed against insurer to advance the purpose of providing coverage.

(App. 5–9) (internal citations omitted). The trial court then entered judgment in favor of D'Angelo, finding that she was "entitled to underinsured motorist coverage from [State Farm] for her negligent infliction of emotional distress claims arising out of the death of her son in an automobile/bicycle collision." (App. 9).

State Farm filed a petition for interlocutory appeal, and we accepted jurisdiction pursuant to Indiana Appellate Rule 14(B) on January 30, 2007.

## DECISION

State Farm asserts that the trial court erred in granting summary judgment to D'Angelo. Specifically, State Farm contends that D'Angelo's claim for emotional distress does not constitute a bodily injury within the meaning of its policy and that any available coverage has been exhausted. Furthermore, State Farms asserts that its policy does not violate Indiana Code section 27–7–5–2.

Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Hopper v. Carey,* 810 N.E.2d 761, 764 (Ind.Ct.App.2004), *trans. denied.* We must reverse the grant of a summary judgment motion if the record discloses an incorrect application of the law to those facts. *Lake States Ins. Co. v. Tech Tools, Inc.,* 743 N.E.2d 314, 317 (Ind.Ct.App.2001).

"Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment." *Doe v. Donahue,* 829 N.E.2d 99, 106 (Ind.Ct.App.2005), *trans. denied, cert. denied,* —— U.S. ——, 126 S.Ct. 2320, 164 L.Ed.2d 839 (2006). "In addition, '[t]he fact that the parties [made] cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Indiana Farmers Mut. Ins. Group v. Blaskie,* 727 N.E.2d 13, 15 (Ind.Ct.App.2000)).

### 1. *Coverage Under State Farm's Policy*

■ The interpretation of an insurance policy is primarily a question of law, and therefore, is a question particularly suited for summary judgment. *Lake States*, 743 N.E.2d at 318. "Where there is an ambiguity, policies are to be construed strictly against the insurer." *Id.* "An insurance contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." *Allstate Ins. Co. v. Bradtmueller*, 715 N.E.2d 993, 997 (Ind.Ct.App.1999), *trans. denied.* An ambiguity does not exist, however, merely because the parties favor a different interpretation. *Id.* Where terms are unambiguous, they should be given their plain and ordinary meaning. *Farmers Ins. Exchange v. Smith*, 757 N.E.2d 145, 149 (Ind.Ct.App.2001), *trans. denied.* A court should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Id.*

■ Here, we do not address whether D'Angelo has a claim for negligent infliction of emotional distress under the modified impact rule[2] but only whether D'Angelo's claim for emotional distress qualifies as an *independent* bodily injury pursuant to State Farm's policy. In so doing, we adopt the reasoning set forth in the dissent in *State Farm Mut. Auto. Ins. Co. v. D.L.B.*, 862 N.E.2d 678, 684–86 (Ind. Ct.App.2007), *reh'g denied, petition for trans. filed*, June 25, 2007.[3]

As in the *D.L.B.* dissent, we find the United States Court of Appeals for the Seventh Circuit's opinion in *Allstate Ins. Co. v. Tozer*, 392 F.3d 950 (7th Cir.2004) instructive.[4] The *Tozer* court determined

---

2. In Indiana, a plaintiff may have a claim for emotional distress if the plaintiff can "demonstrate a direct physical impact resulting from the negligence of another." *Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989, 997 (Ind. 2006). The impact need not "cause physical injury to the plaintiff," and any resulting "emotional trauma suffered by the plaintiff does not need to result from a physical injury caused by the impact." *Id.* at 996. However, the " 'direct impact' is properly understood as the requisite measure of 'direct involvement' in the incident giving rise to the emotional trauma." *Conder v. Wood*, 716 N.E.2d 432, 435 (Ind.1999). Thus, the impact must "arise[ ] from the plaintiff's direct involvement in the tortfeasor's negligent conduct." *Id.* Because we need not address D'Angelo's claim for emotional distress, we do not address whether the act of attempting to lift the vehicle from Joshua—after the accident—satisfies the "direct involvement" requirement.

3. We note that two other cases, *Elliott v. Allstate Ins. Co.*, 859 N.E.2d 696 (Ind.Ct.App. 2007), *trans. granted* and *vacated* by 869 N.E.2d 454 (Ind.2007); and *State Farm Mut. Auto. Ins. Co. v. Jakupko*, 856 N.E.2d 778 (Ind.Ct.App.2006), *trans. granted* and *vacated* by 869 N.E.2d 454 (Ind.2007), also addressed whether emotional distress constituted bodily injury and were claims confined to the respective policies' "each person" limits. The Indiana Supreme Court, however, granted transfer of both cases, thereby vacating the Court of Appeals' opinions. *See* App. R. 58(A).

4. In *Tozer*, three siblings were involved in an automobile accident. One brother sustained severe injuries and died. His siblings sustained minor injuries. The automobile owner had insurance through Allstate Insurance Company ("Allstate"). The insurance policy limited Allstate's liability for bodily injury claims to $100,000 for "each person" and $300,000 for "each accident." The policy defined bodily injury as " 'physical harm to the body, sickness, disease or death.' " 392 F.3d at 953. The policy limited its liability to $100,000 for "each person" and $300,000 for "each accident" and defined those limits as follows:

> The limit stated for each person for bodily injury is our total limit of liability for all damages because of bodily injury sustained by one person, including all damages sustained by anyone else as a result of that bodily injury. Subject to the limit for each person, the limit stated for each accident is

that under Indiana law, "the question of whether the siblings' claims fall under the 'each person' limit of liability ... is an issue of contract interpretation," and therefore looked to the "terms of the policy to ascertain the scope of its coverage." *Id.* at 953. Upon review of the policy's terms, the *Tozer* court found that

> the siblings' claims do not amount to separate "bodily injuries" under the policy. A reasonable interpretation of the policy's definition of bodily injury— "physical harm to the body, sickness, disease, or death"—does not include emotional distress, at least where, as here, the distress is not caused by physical trauma.

*Id.* The *Tozer* court continued:

> Seeking to avoid this result, defendants point to cases from other jurisdictions holding that emotional distress qualifies as a separate bodily injury under policies similar to the one at issue in this case.... These cases frame the issue as whether the underlying tort— negligent infliction of emotional distress—is an independent or derivative cause of action.[ ] Because negligent infliction of emotional distress is an independent tort in those jurisdictions, that line of authority reasons that a claim of emotional distress also constitutes a separate "bodily injury" under the terms of an insurance policy.... Defendants assert that the Indiana Supreme Court would follow this line of reasoning and,

given that negligent infliction of emotion distress is an independent tort in Indiana ... hold that the siblings' claims are separate bodily injuries under the policy....

> We disagree.... [A]ccepting the approach advocated by defendants would require us to ignore the settled principle of Indiana law that the construction of an insurance policy is a matter of contract interpretation.

> ... [T]he characterization of a claim as derivative or independent is irrelevant to whether the claim qualifies as a separate bodily injury under an insurance policy.

> * * *

> ... [T]he extent of an insurer's liability is a matter of contract interpretation governed by the terms of the policy.

*Id.* at 954–55 (internal citations and footnote omitted).

In this case, State Farm limits its liability as follows: "Under 'Each Person' is the amount of coverage for all damages due to *bodily injury* to one person. *'Bodily injury* to one *person'* includes *all* injury and damages to others *resulting from* this *bodily injury*." (App. 29) (emphases in original and added). "Resulting" means "to proceed or arise as a consequence, effect, or conclusion[.]" Merriam–Webster Dictionary at http://www.mw.com/dictionary/resulting (Oct. 9, 2007). "From" is "used

our total limit of liability for all damages for bodily injury.
*Id.* (emphasis omitted).

Allstate paid the brother's estate $100,000 under the insurance policy. The siblings then filed a complaint, seeking damages for emotional distress caused by seeing their brother's injuries and death. Allstate filed suit in the United States District Court for the Southern District of Indiana, seeking a declaration that the siblings' claims were subject to the $100,000 "each person" limit of liability ap-

plicable to their brother's injuries and that it had exhausted its liability by paying his estate $100,000. The district court "interpreted the policy's definition of bodily injury to include a claim for emotional distress so long as the plaintiff sustained a physical impact at the time of the event triggering the claim, even if that impact did not cause the emotional distress." 392 F.3d at 951. Accordingly, the district court held that each sibling had a separate bodily injury claim under the policy. Allstate appealed.

as a function word to indicate the source, cause, agent, or basis[.]" *Id.*

D'Angelo's claim for emotional distress arises from the fact that she witnessed Joshua's injuries. Clearly, D'Angelo's damages resulted from Joshua's bodily injury, and her claim therefore is subject to the $100,000 limit applicable to Joshua's injuries, the limits of which have been exhausted.

Furthermore, D'Angelo cannot be subject to the liability limit of for "Each Accident" under State Farm's policy. The policy provides that "[u]nder 'each Accident' is the total amount of coverage, subject to the amount shown under 'Each Person', for all damages due to *bodily injury* to two or more *persons in the same accident.*" (App. 29) (emphases in original and added). Subject to the limits imposed by the "Each Person" provision of the policy, the "Each Accident" provision limits State Farm's total liability for all damages due to bodily injury to $300,000. The "Each Accident" allowance, however, is available only to persons *"in the same accident."* (App. 29) (emphasis added).

"In" is a "function word," indicating inclusion. Merriam–Webster Dictionary at http://mw1.merriam-webster.com/ dictionary/in (Oct. 10, 2007). Thus, the "Each Accident" coverage applies only to people who are actually involved in the accident at issue. It is unreasonable to assume that State Farm's underinsured-motorist coverage is intended to extend coverage to individuals who are not "in" the covered accident. Otherwise, coverage would be extended to by-standers and those without any relation to the insured, thereby rendering the "in the same accident" requirement meaningless.

In this case, D'Angelo came upon the scene after the accident and was not *in* the accident. Therefore, coverage under the limits for "Each Accident" is not available for D'Angelo.

### 2. *Indiana's Underinsured Motorist Statute*

■■■■ State Farm asserts that its policy does not contravene Indiana's underinsured-motorist statute, codified at Indiana Code section 27–7–5–2.

> Generally, an insurer has the right to limit its coverage of risks and its liability, and in so doing may impose exceptions, conditions, and exclusions upon its contractual obligations that are not inconsistent with public policy. Where a contract actually contravenes a statute, the court's responsibility is to declare the contract void. Therefore, it is crucial that the court determines whether a contract actually contravenes the statute. Because we value the freedom to contract so highly, we will not find that a contract contravenes a statute unless the language of the implicated statute is clear and unambiguous that the legislature intended that the courts not be available for either party to enforce a bargain made in violation thereof.

*American Family Mut. Ins. Co. v. Federated Mut. Ins. Co.,* 775 N.E.2d 1198, 1206 (Ind.Ct.App.2002) (internal citation omitted).

Indiana Code section 27–7–5–2 provides, in relevant part, as follows:

> (a) The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor

vehicle, or in a supplement to such a policy, the following types of coverage: (1) in limits for bodily injury or death and for injury to or destruction of property not less than those set forth in IC 9–25–4–5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, and for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles for injury to or destruction of property resulting therefrom; or

(2) in limits for bodily injury or death not less than those set forth in IC 9–25–4–5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

Indiana Code section 9–25–4–5 requires automobile liability insurance in the minimum amount of $25,000 for bodily injury to or the death of one individual and $50,000 for bodily injury to or the death of two or more individuals in any one accident.

■■■ Underinsured-motorist coverage is " 'to provide individuals indemnification in the event negligent motorists are not adequately insured from damages that result from motor vehicle accidents.' " *Veness v. Midland Risk Ins. Co.*, 732 N.E.2d 209, 212 (Ind.Ct.App.2000) (quoting *United Nat'l Ins. Co. v. DePrizio*, 705 N.E.2d 455, 456 (Ind.1999)). Thus, underinsured-mo-

torist coverage "serves to promote the recovery of damages for innocent victims of accidents with … underinsured motorists." 732 N.E.2d at 212. "Any language in the insurance policy which limits or diminishes the protection required by statute is contrary to public policy." *Whitledge v. Jordan*, 586 N.E.2d 884, 886 (Ind. Ct.App.1992), *trans. denied.*

Regarding underinsured-motorist coverage, State Farm's policy provides:

We will pay damages for *bodily injury* an insured is legally entitled to collect from the owner or driver of an *underinsured motor vehicle.* The *bodily injury* must be sustained by an insured and caused by accident arising out of the operation, maintenance or use of an *underinsured motor vehicle.*

(App. 27). Regarding the limits of liability for underinsured-motorist coverage, the policy provided as follows:

The amount of coverage is shown on the declarations page under "Limits of Liability—W—Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to *bodily injury* to one *person.* "*Bodily injury to one person*" includes all injury and damages to others resulting from this *bodily injury.* Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

(App. 29).

As to the limits of liability—the amount State Farm would pay on behalf of its insured—the policy provided as follows:

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability—Coverage A—Bodily Injury, Each Person, Each Accident". Under "Each Person" is the

amount of coverage for all damages due to *bodily injury* to one *person.* *"Bodily injury* to one *person"* includes all injury and damages to others resulting from this *bodily injury.* Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to *bodily injury* to two or more *persons* in the same accident.

(App. 22).

State Farm's policy does not limit D'Angelo's underinsured-motorist coverage in a manner greater than the limits of her liability coverage. Accordingly, we find that the policy does not violate Indiana Code section 27–7–5–2. *See Jackson v. Jones,* 804 N.E.2d 155, 160 (Ind.Ct.App.2004); *Whitledge,* 586 N.E.2d at 886–87.

Reversed and remanded.

MATHIAS, J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

As a parent, I can imagine few nightmares worse that than that which Jelana Hobbs D'Angelo lived through on May 23, 2001. Coming upon an accident scene where her fourteen year-old son Joshua lay trapped beneath an automobile, trying in vain to free him, and watching him die in front of her, she sustained emotional distress which was every bit as much of a natural and direct consequence of the accident as Joshua's death. That distress, with its attendant shock, and mortification, was a visceral reaction far beyond grief at the loss of a child and far beyond what any of us should ever have to endure.

There is no question but that Helen Goldey, the driver of the car which struck, ran over, trapped and ultimately crushed Joshua, was negligent. There is similarly no dispute that his mother Jelana suffered emotional distress. Indeed, State Farm concedes both.

What State Farm does not concede is that Jelana sustained an independent bodily injury as a result of this accident. But, if Jelana's emotional distress—uncontrollable crying, loss of appetite, and inability to sleep and concentrate—is not a bodily injury, then what is it? Are not the neurotransmitters in her brain parts of her body as much as her arms and legs? Are not the electro-chemical impulses that they transmit bodily functions as much as circulation and respiration? And, if the neurotransmitters are parts of her body and if the electro-chemical impulses that they transmit are bodily functions, then doesn't it follow that emotional distress which is caused by the impulses is a bodily injury?

Even if we were to require a physical component in order for emotional distress to constitute a bodily injury, would that requirement not be satisfied by the physical manifestations of the emotional distress that Jelana has sustained? We so held in *State Farm Mut. Auto. Ins. Co. v. Jakupko,* 856 N.E.2d 778 (Ind.Ct.App.2006) *trans. granted* 869 N.E.2d 454 (Ind.2007), in *Elliott v. Allstate Ins. Co.,* 859 N.E.2d 696 (Ind.Ct.App.2007), *trans. granted* 869 N.E.2d 454 (Ind.2007) and in *State Farm Mut. Auto. Ins. Co. v. D.L.B.,* 862 N.E.2d 678 (Ind.Ct.App.2007). Although our Supreme Court has granted transfer in *Jakupko* and *Elliott* thereby vacating their precedential value and transfer is pending in *D.L.B.,* the logic underlying these decisions and similar decisions in other jurisdictions remains in tact.

In addition, our General Assembly has mandated that uninsured and underinsured motorist coverage for bodily injury include sickness and disease. See Indiana Code § 27–7–5–2. Thus, as the trial court correctly determined, State Farm cannot provide less coverage than that mandated by our General Assembly. Even if Jela-

na's emotional distress is not a bodily injury, should it not be classified under sickness or disease.

Finally, State Farm argues that Jelana's emotional distress did not arise as a result of this accident, but from her coming on the scene afterwards. To accept this argument would require us to ignore that both Joshua's death and Jelana's distress were the proximate results of the collision caused by Helen Goldey's negligence. This tragic accident did not end when the wheels of the car rolled over and stopped on top of Joshua. Rather, the sequence that began when Helen Goldey negligently struck Joshua and ran over him continued unbroken until Joshua's death when Jelana and emergency personnel were unable to free him and keep him from being crushed by Goldey's car. By State Farm's logic, if Jelana's emotional distress did not result from this accident, then neither did Joshua's death.

Courts have long struggled with issues relating to the negligent infliction of emotional distress because of concerns over frivolous or false claims, a proliferation of litigation and issues of foreseeability. None of such concerns is present here. Goldey's negligence in causing the accident is undisputed as is Jelana's emotional distress. Jelana is Joshua's mother. She was at the accident scene immediately after the collision occurred and directly involved in trying to free Joshua from the crushing weight of the Goldey's car. Her emotional distress is severe, verifiable and goes far beyond the grief that any parent would experience at the loss of her child and far beyond the reaction that would be sustained by an unrelated bystander.

I respectfully dissent and would affirm the trial court's decision in all respects.